UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
JOHN ROE,                                                  :
                                                           :
                         Plaintiff,                        :
                                                           :      18-CV-2644 (VSB)
               -against-                                   :
                                                           :      **OPINION & ORDER**
UNITED STATES OF AMERICA, JOHN AND                         :
JANE DOES,                                                 :
                                                           :
                         Defendants.                       :
                                                           :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/15/2019

Appearances:

Jonathan Rosenberg
Gerard Savaresse
O'Melveny & Myers LLP
New York, New York
*Counsel for Plaintiff*

Julie Ann Dona
Legal Aid Society of New York
New York, New York
*Counsel for Plaintiff*

Kirti Vaidya Reddy
U.S. Attorney's Office, SDNY
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff John Roe brings this action against Defendant the United States of America ("United States" or the "Government") under the Federal Tort Claims Act ("FTCA"), for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, and against and several John and Jane Doe individual Defendants ("Individual

Defendants")[1] pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Compl.)[2] Pending before me is the motion of the United States to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6) with regard to Plaintiff's cause of action for intentional infliction of emotional distress. Because I find that 8 U.S.C. § 1252(g) does not divest me of jurisdiction over Plaintiff's causes of action, and Plaintiff plausibly alleges a cause of action for intentional infliction of emotional distress, the motion of the United States is DENIED.

## I. **Background**[3]

Plaintiff is a citizen and national of ▮▮▮▮▮▮ who lived continuously in the United States between 1998 and May 2016, when he was deported by Defendants. (Compl. ¶ 14, 31.) Prior to his removal, ▮▮▮▮▮▮



. (*Id.* ¶ 18.) ▮▮▮▮

(*Id.* ¶¶ 18–19.) ▮▮▮▮

(*Id.* ¶ 19.) ▮▮▮▮

---

[1] The United States and the Individual Defendants are collectively referred to as "Defendants."

[2] "Compl." refers to the Complaint and Jury Demand ("Complaint") filed in this action on June 27, 2018. (Doc. 8.)

[3] The allegations referenced in this decision are taken from the Complaint, and are assumed to be true for purposes of this motion. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). My references to such factual allegations should not be construed as a finding as to their veracity, and I make no such findings.

█████████████████████████████████████ (*Id.* ¶ 21.)

After receiving a Notice to Appear that formally commenced removal proceedings against him, Plaintiff was detained at █████████████████████████████ (*Id.* ¶ 22.) ████████████████████████████████████████████████████████████████████████, Plaintiff applied for withholding or deferral of removal pursuant to the United Nations Convention Against Torture. (*Id.* ¶ 23.) Plaintiff submitted an affidavit to the Immigration Judge, explaining that he had received several threats based on █████████████████████ ██████████. (*Id.* ¶ 24.) ████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████ (*Id.*) ██████████ also submitted an affidavit explaining ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.* ¶ 25.) █ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████ (*Id.* ¶ 26.)

The Immigration Judge found that: (1) Plaintiff's testimony was credible; (2)██████ ██████████████████████████████████████████ (3) ██████████████ ███████████████████████████████████████████████████; and (4) █ █████████████████████████████████████████ (*Id.* ¶ 27.) Notwithstanding these findings, the Immigration Judge denied Plaintiff's application and ordered him removed to ███████████████████. (*Id.* ¶ 28.)

Plaintiff timely appealed the Immigration Judge's decision to the Board of Immigration


Appeals ("BIA"), automatically staying the Immigration Judge's removal order. (*Id.* ¶ 29; *see also* 8 C.F.R. § 1003.6.) On May 2, 2016, the BIA received the Notice of Appeal, but two days later, Defendants began taking steps to remove Plaintiff by taking him to the ▮▮▮▮ Immigration and Customs Enforcement ("ICE") office and instructing him to contact his consulate to obtain travel documents. (*Id.* ¶¶ 29–30.) Plaintiff informed the officials at that office that he had filed an appeal and could not be deported, and asked them to contact his attorney. (*Id.* ¶ 30.) Instead of contacting his attorney or the BIA to verify the status of the removal order, a deportation officer incorrectly told Plaintiff that "no appeal was filed." (*Id.*) On May 9, 2016, Plaintiff was transferred to Louisiana, then to Miami on May 11, where Plaintiff once again informed Defendants that his appeal was pending and that he should not be deported. (*Id.* ¶ 31.) Defendants ignored Plaintiff's statements, and on May 17, 2016, deported him to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

On May 19, 2016, Plaintiff's attorney notified Defendants that Plaintiff had been deported in violation of a mandatory and automatic stay. (*Id.* ¶ 35.) Later in the summer, because Defendants still had not returned Plaintiff to the United States, his attorneys filed a law suit on August 12, 2016 to compel his return. (*Id.* ¶ 37.) One day later, the BIA affirmed the Immigration Judge's order and dismissed the appeal, which Plaintiff timely appealed to the Second Circuit on August 26, 2016. (*Id.* ¶¶ 38–39.) Although the Government conceded that Plaintiff was "improperly removed . . . on May 17, 2016, while his appeal of the Immigration Judge's decision . . . was pending," they did not return him to the United States until February 1, 2017, almost eight months after his unlawful removal. (*Id.* ¶¶ 40, 49.)

During the time Plaintiff was in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ he "was forced to live in hiding, fearing for his life and the well-being of his family." (*Id.* ¶ 43.) Despite taking extensive

precautions, (*id.* ¶¶ 43–45), ██████████████████████████████████████

████████████████████████████████████████████████████████████████

██ ████████████████████████████████████████████████████████████

████████████████████████████████

After Plaintiff's return to the United States, the BIA granted his November 14, 2016 motion to reopen his immigration case, finding that his newly submitted evidence demonstrated prima facie eligibility for relief under the Convention Against Torture. (*Id.* ¶ 50.)

## II. Procedural History

Plaintiff filed this action under seal on March 23, 2018. (Docs. 2–6.) The Complaint was filed in redacted form on June 27, 2018. (Doc. 8.) On July 25, 2018, the United States filed the instant motion to dismiss, (Doc. 13), as well as a memorandum of law in support of the motion, (Doc. 14). On August 27, 2018, Plaintiff filed his opposition, (Doc. 16), and the United States filed its reply on October 15, 2018, (Doc. 22).

## III. Legal Standards

### A. *Federal Rule of Civil Procedure 12(b)(1)*

A claim may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To survive a Rule 12(b)(1) motion to dismiss, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d

Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). Furthermore, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id*.

### B.    *Federal Rule of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## IV. Discussion

### A. *Subject Matter Jurisdiction Under the Federal Tort Claims Act*

#### 1. Section 1252(g)

In pertinent part, 8 U.S.C. § 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The question before me is whether this statute deprives me of jurisdiction to hear the claims of a noncitizen who was mistakenly removed in violation of a mandatory stay pending appeal. This is a question of first impression in this district having not been considered by the Second Circuit or any other district court in this circuit. To date, only three circuit courts have considered this question, and they have come to different conclusions. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) (finding that "[a] decision or action to violate a court order staying removal . . . falls outside of [§ 1252(g)]'s jurisdiction-stripping reach" and did not deprive the district court of jurisdiction).[4] *But see Silva v. United States*, 866 F.3d 938, 942 (8th Cir. 2017) (holding that even where a noncitizen was removed in violation of a stay, the district court "lacked jurisdiction to hear [the noncitizen]'s claims, because they [arose] from a decision to execute a removal order"); *Foster v. Townsley*, 243 F.3d 210, 215–16 (5th Cir. 2001) (finding that plaintiff's claims related to his deportation while his appeal was pending fell "within the ambit of section 1252(g) and [were] precluded from judicial review").

After the Immigration Judge denied Plaintiff relief under the Convention Against Torture

---

[4] Several district courts have similarly found that section 1252(g) does not apply to claims arising from the execution of a stayed removal order. *See, e.g.*, *Avalos-Palma v. United States*, No. 13–5481(FLW), 2014 WL 3524758, at *8 (D.N.J. July 16, 2014); *Turnbull v. United States*, No. 1:06cv858, 2007 WL 2153279, at *5 (N.D. Ohio July 23, 2007).

7

and ordered him removed, Plaintiff appealed to the BIA. (Compl. ¶ 29.) The timely filing of the appeal to the BIA automatically stayed the order of removal. *See* 8 C.F.R. § 1003.6 (removal order "shall not be executed" during pendency of a BIA appeal). It also meant that the removal order did not become final. *See* 8 U.S.C. § 1101(a)(47) (an order of removal is final only upon "a determination by the [BIA] affirming such order" or upon the expiration of the time for an appeal).

The Government concedes that Plaintiff's deportation violated the automatic stay of the Immigration Judge's order. (*See* U.S. Mem. 2 ("While [Plaintiff's] appeal was pending before the BIA and in violation of an automatic stay of removal . . . ICE officials mistakenly removed Plaintiff . . . .").)[5] Nonetheless, the Government argues that the interpretation of the Fifth and Eighth Circuits is correct and urges me to adopt that interpretation and find that I do not have jurisdiction to hear Plaintiff's claims because they purportedly "arise from" the execution of his removal order. The Government fails to address how such an interpretation can be viewed as consistent with the prescription of the Supreme Court that § 1252(g) be given a "narrow reading." *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 487 (1999).[6]

In *AADC*, the Supreme Court explained that section 1252(g) is not a "zipper clause" that "covers the universe of deportation claims"; rather, it applies only to three discrete actions that

---

[5] "U.S. Mem." refers to the Memorandum of Law in Support of the United States of America's Motion to Dismiss the Complaint, dated July 25, 2018. (Doc. 14.)

[6] Under the Government's broad interpretation of section 1252(g), the Attorney General and his subordinates would be free to ignore with impunity automatic and court-ordered stays, so long as the Government's conduct arguably related to non-final removal orders. No "narrow reading" of the statute could lead to the conclusion that, without saying so directly, Congress intended to strip federal courts of their authority to issue orders related to cases properly before them. *See Arce*, 899 F.3d at 801 (finding "no support for the government's claim that Congress intended to prohibit federal courts from enforcing *any* court order so long as it is related to or in connection with an immigration proceeding").

8

the Attorney General may take: the "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* at 482 (emphasis in original). The Government argues that section 1252(g) applies to Plaintiff's claims because the "challenged conduct falls within one of these discrete areas." (U.S. Mem. 5.) But section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the attorney general." *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (discussing the holding in *AADC*). Accordingly, even if Plaintiff's deportation may technically relate to a removal order, a determination of whether section 1252(g) deprives me of jurisdiction over his claims requires a more careful analysis.

In *AADC*, the Supreme Court explained that there "was good reason for Congress to focus special attention upon" the three discrete areas, because "[a]t each stage the Executive has discretion to abandon the endeavor . . . ." 525 U.S. at 483. Section 1252(g) then, seemed "clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations." *Id.* at 485; *see also id.* at 487 (describing § 1252(g) as a "discretion-protecting provision"). Following the Supreme Court's direction in *AADC* and *Jennings* and interpreting § 1252(g) narrowly, I find that it only applies to discretionary acts of the Attorney General. Courts in this district agree. *See, e.g.*, *Calderon v. Sessions*, 330 F. Supp. 3d 944, 954 (S.D.N.Y. 2018) ("The jurisdictional bar of Section 1252(g) applies to ICE's *discretionary* decisions . . . ." (emphasis in original)); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) (noting that § 1252(g) "prohibits judicial review of challenges to the discretionary decision whether to execute a removal order"); *cf. Saha v. Lynch*, 659 F. App'x 700, 701 (2d Cir. 2016) (under § 1252(g), courts "lack jurisdiction over any exercise of prosecutorial discretion"); *see also Avalos-Palma*, 2014 WL 3524758, at *8 ("Section 1252(g) is

9

only intended to bar courts from interfering with discretionary decisions of the Attorney General in the context of deportation proceedings.").

The Government argues that the "decision to remove Plaintiff was discretionary." (U.S. Reply 5.)[7] The Government misses the issue. A stay of removal "temporarily suspend[s] the source of authority to act," and "set[s] aside . . . the source of the Government's authority to remove." *Nken v. Holder*, 556 U.S. 418, 428–29 (2009); *see also Arce*, 899 F. 3d at 800 (during a court-ordered stay, "the Attorney General lacked the authority to execute the removal order"). Once Plaintiff appealed the Immigration Judge's order, thereby triggering a mandatory and automatic stay, the Government had neither the authority nor the discretion to remove Plaintiff, and § 1252(g) therefore does not apply to his claims. *See Arce*, 899 F.3d at 801 ("Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated.").

### 2. Foreign-Country Exception

The Government also argues that I do not have jurisdiction to hear Plaintiff's claims because they arise under the "foreign-country exception" to the FTCA, because his claims did not arise in the United States. (*See* U.S. Mem. 7–8; *see also* 28 U.S.C. § 2680(k) (the FTCA does not apply to "[a]ny claim arising in a foreign country").) The Government relies on *Sosa v. Alvarez-Machain*, in which the Supreme Court rejected the "headquarters doctrine," under which courts had found that the FTCA applied to any "acts or omissions occurring [in the United States] which have their operative effect in another country." 542 U.S. 692, 701 (2004).[8] The

---

[7] "U.S. Reply" refers to the Reply Memorandum of Law in Support of the United States of America's Motion to Dismiss the Complaint, dated October 15, 2018. (Doc. 22.)

[8] The facts underlying *Sosa*, in which the foreign-country exception applied, are easily distinguished from the facts before us. In *Sosa*, the plaintiff, Alvarez-Machain, was in a foreign country when the tortious conduct occurred and when his first injury occurred, and the only relation to tortious conduct in the United States was that DEA agents had asked Mexican nationals to abduct Alvarez-Machain in Mexico and bring him to the United States. 542 U.S. at

*Sosa* court noted that "a cause of action sounding in tort arises in the jurisdiction where the last act necessary to establish liability occurred; *i.e.*, the jurisdiction in which injury was received." *Id.* at 705 (internal quotation marks omitted).

An evaluation of Plaintiff's FTCA claims demonstrates that the last act necessary to establish liability for each claim, and some resulting injury, occurred in the United States. For Plaintiff's negligence claim, the negligent acts of the Government officials that led to Plaintiff's removal are alleged to have occurred in the United States, and Plaintiff suffered the injury of removal while he was still in the United States. (*See* Compl. ¶¶ 60–65.) Similarly, for Plaintiff's claims for negligent and intentional infliction of emotional distress, Plaintiff alleges that the Government officials owed a duty to Plaintiff, that their extreme and outrageous conduct occurred in the United States, and that Plaintiff suffered emotional distress in the United States as a result of that conduct. (*See* Compl. ¶¶ 53–59, 66–71.) Accordingly, the "last act necessary to establish liability" for each of these claims occurred in the United States, and the foreign-country exception does not apply. *See Sosa*, 542 U.S. at 705.

The Government does not identify a single court that has found that the foreign-country exception applies to removals in violation of stays. To the contrary, other courts have expressly rejected the Government's argument. *See, e.g.*, *Arce*, 899 F.3d at 801 n.5 (rejecting the argument that claims related to removal in violation of a stay "are barred by the FTCA's foreign country exception" because plaintiff's "injury clearly occurred in the United States when the government removed him . . . and deported him"); *cf. Turnbull*, 2007 WL 2153279, at *8 (plaintiff's "true injury" occurred when defendants refused to extract him from the plane in the United States).

---

697–698. Here, the tortious conduct of Defendants is alleged to have taken place in the United States while Plaintiff was located in the United States, and his first injury is alleged to have occurred in the United States.

11

Accordingly, because the tortious conduct underlying each of Plaintiff's claims against the United States and at least some of his injuries resulting from that conduct occurred in the United States, the foreign-country exception does not apply, and I have jurisdiction to hear the claims. Whether the foreign-country exception may prevent Plaintiff from recovering for certain of his injuries is a question to be determined at trial. *See Lyttle v. United States*, 867 F. Supp. 2d 1256, 1301 n.18 (M.D. Ga. 2012) (finding that the foreign-country exception "preserves sovereign immunity for any harm that arises solely outside the United States" and reserving for trial "the issue of whether [plaintiff]'s damages for continuing harm that originated in the United States [were] recoverable").

### 3. Uniquely Government Action

Finally, the Government argues that I do not have jurisdiction to hear Plaintiff's FTCA claims because Plaintiff cannot demonstrate that the "claim asserted against the Government is analogous to a 'comparable cause of action against a private [individual].'" (U.S. Mem. 9 (quoting *C.P. Chem. Co. Inc. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987)).) According to the Government, the removal of a noncitizen from the United States is a uniquely government action, because private persons do not have the authority to deport people. (U.S. Mem. 10.) But "[t]o say that the challenged action is one that only the federal government does in fact perform does not necessarily mean that no private analogue exists," and the fact that actions are "uniquely governmental does not mean that they have no private analogue for [FTCA] purposes." *See Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012) (internal quotation marks omitted). The Supreme Court has rejected the contention that the private analogue requirement "must be read as excluding liability in the performance of activities which private persons do not perform." *Indian Towing Co v. United States*, 350 U.S. 61, 64 (1955). Indeed, even though New York law

does not impose a duty on private actors to abstain from deporting noncitizens in violation of stays, I must "look further afield" for a private analogue. *See United States v. Olson*, 546 U.S. 43, 46 (2005).

"[U]nder New York law, a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) (internal quotation marks omitted). "[T]o state a claim for intentional infliction of emotional distress, the plaintiff must show (i) extreme and outrageous conduct[,] (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress." *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00CIV5433 (GBD), 2001 WL 180055, at *1 (S.D.N.Y. Feb. 22, 2001) (internal quotation marks omitted). Finally, "to state a claim for negligent infliction of emotional distress, a plaintiff must allege that she was owed a duty, that the defendant breached that duty, and that the plaintiff suffered emotional injury as a result." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 676 (S.D.N.Y. 2006). Plaintiff argues that the automatic stay created a statutory duty for Defendants to refrain from removing him during the pendency of his appeal, that Defendants knew of that duty, and that they deported him knowing that he would face significant dangers upon arrival in his home country. (Compl. ¶ 55.) I must consider whether, under New York law, a similar duty exists where private citizens would be liable under the claims described above for disregarding a statutory requirement. I find that each of Plaintiff's FTCA claims would be viable as tort claims against private citizens who disregarded or violated a statutory duty. *See Estate of Pesante v. Cty. of Seneca*, 768 N.Y.S.2d 69, 71 (2003) (violation of regulation limiting number of children placed in foster home could

13

support a negligence claim against defendants named individually and in representative capacity of county); *Adams v. Oak Park Marina Inc.*, 689 N.Y.S.2d 828, 829 (1999) (violation of statutory duty can support a claim of negligent or reckless infliction of emotional distress); *see also Avalos-Palma*, 2014 WL 3524758, at *12 (finding that removal in violation of a stay had private analogues for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress); *Lyttle*, 867 F. Supp. 2d at 1301 (finding that unlawful deportation had private analogues for negligence and intentional infliction of emotional distress).

For the reasons stated above, I find that no provision of the FTCA deprives me of jurisdiction to hear Plaintiff's claims, and the Government's motion to dismiss for lack of subject matter jurisdiction is DENIED.

### B. *Failure to State a Claim for Intentional Infliction of Emotional Distress*

The Government also argues that Plaintiff's claim for intentional infliction of emotional distress, (*see* Compl. ¶¶ 53–59) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because "Plaintiff does not allege that the alleged harm caused by his removal by ICE officials was intentional." (U.S. Mem. 11–12.) However, the tort of intentional infliction of emotional distress can be supported by demonstrating that the harm was caused "intentionally or recklessly." *Freihofer v. Hearst Corp.*, 490 N.Y.S.2d 735, 741 (1985); *see also James v. Flynn*, 19 N.Y.S.3d 618, 620 (2015) ("[R]eckless conduct is encompassed within the tort of intentional infliction of emotional distress . . . .") Accepting all of the allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, I find that the Complaint adequately alleges that Defendants knew or were reckless in not knowing that Plaintiff had filed an appeal, that the appeal stayed the removal order, and that removing Plaintiff in violation of the stay would subject Plaintiff to significant danger. (*See* Compl ¶¶ 4–5, 30–31, 53–59; *see also*

14

*Turnbull*, 2007 WL 2153279, at *9 (finding that allegations of removal in violation of a stay supported a claim of intentional infliction of emotional distress).

Accordingly, the motion of the United States to dismiss the intentional infliction of emotional distress claim pursuant to Rule 12(b)(6) is DENIED.

## V.  **Conclusion**

For the reasons stated above, the United States' motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Document 13.

Since various filings in this case have been filed in redacted form, I am providing a copy of this Opinion & Order to the parties in advance of filing it on the public docket. I direct the parties to submit a joint letter on or before March 15, 2019, indicating what portions, if any, of this Opinion & Order should be redacted and the rationale for such redactions.

SO ORDERED.

Dated: March 8, 2019
	New York, New York

Vernon S. Broderick
United States District Judge